UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADRIAN ALBERTO OSUNA GOMEZ,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR AND
FACILITY ADMINISTRATOR,

Respondent.

Case No. 2:25-cv-02242-TL-TLF

REPORT AND
RECOMMENDATION

Noted for __February 11, 2026__

Petitioner Adrian Alberto Osuna Gomez is currently detained by United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 4. Petitioner has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention or an individualized bond hearing. *Id.* at 2.

The Government has filed a return memorandum along with a supporting declaration and exhibits. Dkts. 8, 9, 10. Petitioner has not filed a response.

Having considered the petition, the Government's motion, the briefs, and exhibits submitted by the parties, and the balance of the record, the Court recommends that petitioner's federal habeas petition (Dkt. 4) should be DENIED.

**BACKGROUND**

Petitioner is a native and citizen of Mexico who was admitted to the United States as a Legal Permanent Resident (LPR) on May 23, 2012. Dkt. 9 (Decl. of Christopher

REPORT AND RECOMMENDATION - 1

Hubbard) at ¶ 4; *see also* Dkt. 10 (Decl. of Katherine G. Collins), Ex. B, Form I-213. On December 9, 2024, petitioner was convicted in the California State Superior Court at Sacramento for the offense of Assault by means of Force likely to cause Great Bodily Injury, in violation of California Penal Code Section 245(a)(4) and was sentenced to a term of imprisonment of two years. Dkt. 9 (Hubbard Decl.) at ¶ 5; Dkt. 10 (Collins Decl.), Ex. A, Conviction Documents.

On October 2, 2025, ICE took petitioner into custody from Pelican Bay State Prison, and issued him a Notice to Appear. Dkt. 9 (Hubbard Decl.) at ¶ 8; Dkt. 10 (Collins Decl.), Exs. B, I-213, and D, Notice to Appear. ICE charged petitioner with being removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1227(a)(2)(A)(iii)), for having been convicted of an aggravated felony as defined in Section 101(a)(43)(F) of the INA (8 U.S.C. § 1101(a)(43)(F)), to wit, a crime of violence for which the term of imprisonment ordered is at least one year. *See id*.

Petitioner requested a hearing before the Immigration Court. Dkt. 10 (Collins Decl.), Exh. C, Request for Disposition. On October 31, 2025, petitioner appeared before the Immigration Judge. Dkt. 9 (Hubbard Decl.) at ¶ 10. At the hearing, petitioner admitted to the allegations contained in the Notice to Appear and conceded the sole charge of removability –that he was convicted of an aggravated felony. *Id.*; Dkt. 10 (Collins Decl.), Ex. D, Notice to Appear. The Immigration Judge sustained the charge of removability. *Id.*, ¶ 10.

On December 1, 2025, petitioner appeared before the Immigration Judge for an individual merits hearing. DKt. 9 (Hubbard Decl.) at ¶ 11. At that hearing, the

REPORT AND RECOMMENDATION - 2

Immigration Judge denied petitioner's applications for relief from removal and ordered petitioner removed to Mexico. *Id.*, ¶ 11. Petitioner reserved appeal of this decision and had until December 31, 2025, to file an appeal. *Id.*, ¶ 10. It is unclear from the current record whether petitioner filed an appeal by the deadline.

**DISCUSSION**

**A.      Statutory Basis for Petitioner's Detention**

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Avilez v. Garland*, 69 F.4th 525, 529-530 (9th Cir. 2023). Section 1226(a) grants the United States Department of Homeland Security ("DHS") the discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 583 U.S. 281, 303-06 (2018).

"Subsection C applies throughout the administrative and judicial phases of removal proceedings ...." *Avilez*, 69 F.4th at 535. This means that individuals who are detained under Section 1226(c) "are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2) [where DHS determines release is necessary for witness-protection

REPORT AND RECOMMENDATION - 3

purposes and the noncitizen will not pose a danger or flight risk.]" *Id.* at 535-36; 8 US.C. § 1226(c).

Section 1226(c) includes any non-citizen who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Title 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny [noncitizen] who is convicted of an aggravated felony at any time after admission is deportable." In this case, petitioner was determined to be removable for having committed an offense covered in 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in Section 101(a)(43)(F) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(43)(F)), to wit, a crime of violence for which the term of imprisonment ordered is at least one year.

Petitioner asserts in his petition that his detention has shifted to discretionary detention under § 1226(a). Dkt. 4 at 4. However, the Ninth Circuit has held that mandatory detention under § 1226(c) "applies throughout the administrative and judicial phases of removal proceedings ...." *Avilez*, 69 F.4th at 535. Thus, § 1226(c) continues to apply to petitioner despite the IJ's order of removal and would continue to apply during any pending appeal to the BIA or the Ninth Circuit.

The Court notes that petitioner's deadline to file an appeal to the BIA expired on December 31, 2025. It is not clear from the record whether petitioner filed an appeal to the BIA by the deadline. If petitioner did file an appeal to the BIA, as discussed above, he remains subject to mandatory detention under § 1226(c).

If petitioner did not file an appeal to the BIA by the December 31, 2025, deadline, as respondents note, petitioner's detention would shift to § 1231 (which applies to

REPORT AND RECOMMENDATION - 4

detention after the entry of a final order of removal) and his detention would still be statutorily required for the initial ninety-day removal period.[1] *See Zadvydas v. Davis*, 533 U.S. 678, 698 (2001) (8 U.S.C. § 1231 "mandates" detention during the 90-day removal period).

Petitioner also argues that he had insufficient assistance of counsel in his criminal case and is entitled to reverse his conviction. Dkt. 4 at 2. He therefore argues that his immigration detention violates his rights. *Id.* But petitioner does not argue or present evidence that his criminal conviction has, at this point, been reversed. Thus, the fact that petitioner believes his criminal attorney rendered ineffective assistance, does not render his detention for immigration purposes improper.

Thus, the current record before the Court shows petitioner is properly detained under either § 1226(c) or § 1231(a), and he is, therefore, not *statutorily* entitled to release or a bond hearing.

---

[1] 8 U.S.C. § 1231 provides, in relevant part:

**(a) Detention, release, and removal of aliens ordered removed**
**(1) Removal period**
**(A) In general**
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
**(B) Beginning of period**
The removal period begins on the latest of the following:
**(i)** The date the order of removal becomes administratively final.
**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
…
**(2) Detention**
**(A) In general**
During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

**B.    Due Process**

Even if petitioner's continued detention is statutorily permitted under 8 U.S.C. § 1226(c), it must also comport with due process. Petitioner argues that his ongoing detention violates his due process rights. He contends he is therefore entitled to release or a bond hearing. Respondent argues that petitioner's continued detention is reasonable and comports with due process. Dkt. 8.

In *Demore*, the Supreme Court rejected a due process challenge to § 1226(c), explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable non-citizens convicted of certain crimes, and held that "the Government may constitutionally detain deportable [non-citizens] during the limited period necessary for their removal proceedings." 538 U.S at 518-21, 526. The Supreme Court emphasized the relatively "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in most cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a non-citizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since the Supreme Court's decision in *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). While it is an open question in

REPORT AND RECOMMENDATION - 6

the Ninth Circuit whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)[2], many district courts that have considered the constitutionality of prolonged mandatory detention—including judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases)); *see also Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 923-24 (W.D. Wash. Jan. 17, 2020) (granting habeas corpus petition and ordering bond hearing for non-citizen whose mandatory detention had become unreasonably prolonged).

In cases involving § 1226(c), where the noncitizen has not previously received a bond hearing, judges in this District have adopted and applied a "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable."[3] *Martinez*, 2019 WL 5968089, at *6-7. Under this analysis, referred to as "the *Martinez* test", the Court considers the following factors:

---

[2] *See Avilez*, 69 F.4th at 538 (declining to rule on the question of whether due process required a bond hearing for a non-citizen detained under § 1226(c) and remanding to the district court to consider that claim); *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022), *judgment vacated on other grounds*, 144 S.Ct. 1339 (2024) ("Whether due process requires a bond hearing for [noncitizens] detained under § 1226(c) is not before us today. And we take no position on that question.").

[3] The Court notes that where a noncitizen is detained under § 1226(c) and has received at least one prior bond hearing, the Court generally applies the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1979). *See, e.g., Ortuno-Perez v. ICE Filed Off. Dir.*, No. 2:23-cv-344-BHS-DWC, 2023 WL 5807305 (W.D. Wash., Aug. 1, 2023) *report and recommendation adopted*, 2023 WL 5802516(W.D. Wash., Sept. 7, 2023); *Rubin v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. 2:24-CV-00260-TL-TLF, 2024 WL 3431914, at *2 (W.D. Wash. June 28, 2024), *report and recommendation adopted*, 2024 WL 3431163 (W.D. Wash. July 16, 2024).

REPORT AND RECOMMENDATION - 7

(1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *9.

Accordingly, the Court will apply these factors to evaluate whether petitioner's detention has become unreasonable and therefore violates due process.

### 1.    Length of Detention to Date

The first factor, the length of detention to date, is considered the most important factor in the analysis. *See*, *e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10. Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the "brief" period authorized in *Demore*,[4] the harder it becomes to justify without conducting an individualized bond hearing. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (finding nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [approximately 12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months."); *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436 (W.D. Wash.

---

[4] Petitioner in *Denmore* was detained for six months. *Demore*, 538 U.S. at 530-31.

REPORT AND RECOMMENDATION - 8

May 5, 2021) (finding detention of 14 months weighed in favor of granting a bond hearing).

Here, when petitioner filed his petition, he had been detained for thirty-nine days and, at this point, his detention has lasted approximately 3.75 months. Because petitioner's detention has not yet extended beyond the "brief" period presumed reasonable in *Demore*, the Court should find this factor weighs in respondents' favor.

2.      *Likely Duration of Future Detention*

The second factor the Court considers is "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Here, the record shows petitioner's appeal of the IJ's removal order to the BIA was due by December 31, 2025. At the time the respondents filed their motion to dismiss on December 15, 2025, petitioner had not yet filed an appeal to the BIA, and it is unclear if he did so by the deadline. Given the uncertainty in the record surrounding the status of a possible appeal to the BIA, the Court has insufficient information to reach a conclusion on this factor and declines to speculate.

The Court should find this factor to be neutral.

3.      *Criminal History*

Under the third and fourth factors, the Court reviews the length of detention compared to the time petitioner spent in prison for the crime that made him removable and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y. 2018). These factors are considered because they are

REPORT AND RECOMMENDATION - 9

relevant to whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262.

Here, petitioner's criminal conviction for the offense of Assault by means of Force likely to cause Great Bodily Injury, in violation of California Penal Code Section 245(a)(4) and was sentenced to a term of imprisonment of two years. At this point, the length of petitioner's detention is significantly shorter than the length of his original sentence.

Accordingly, the Court should find this factors weighs in favor of respondents.

4.    *Nature of the Crime*

Petitioner was convicted of a serious felony, Assault by means of Force likely to cause Great Bodily Injury, in violation of California Penal Code Section 245(a)(4), and was sentenced to a term of imprisonment of two years.

The Court should find the fourth factor weighs in favor of the respondents.

5.    *Conditions of Detention*

Under the fifth factor, the Court considers the conditions of petitioner's detention at the facility where he is detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (citation and internal quotations omitted); *Juarez*, 2021 WL 2323436, at *6.

Neither party makes any specific arguments regarding the conditions of confinement at NWIPC. However, "[a]s courts have [recently] found, detention conditions at NWIPC are 'similar...to those in many prisons and jails.'"*Maliwat v. Scott*,

REPORT AND RECOMMENDATION - 10

No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025); *Toktosunov v. Wamsley*, 25-cv-1724-TL, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) ("Courts in this District have...found that, at this facility, under circumstances similar to that of Petitioner, this factor favors granting a bond hearing."); *Amhirra v. Warden, Nw. Det. Ctr.*, No. 2:25-CV-01376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025) (same); *Doe*, 2024 WL 3291033, at *11 (citing cases); *Rahman v. Garland*, 24-cv-02132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash, June 26, 2025) (citing cases).

Accordingly, the Court should find this factor weighs in favor of petitioner.

6.      *Delays in Removal Proceedings*

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 965 (citing *Hernandez v. Decker*, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).

This factor only weighs against a petitioner when he "has 'substantially prolonged his stay by abusing the processes provided'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As to the Government,

"[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable .... Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11.

Here, there is no allegation or evidence of undue delays caused by either party in petitioner's ongoing removal proceedings. Accordingly, the Court should find the sixth and seventh factors weigh neutrally.

> 7.   *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, under the eighth factor, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11.

"Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* at *10. "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid v. Donelan*, 819 F.3d 486, 495 (1st Cir. 2016).

The Court should decline to predict whether petitioner's removal proceedings will result in a final order of removal, because there is insufficient information at this stage to make that determination. *See Juarez*, 2021 WL 2323436, at *7 ("Petitioner does,

REPORT AND RECOMMENDATION - 12

however, have a petition for review pending before the Ninth Circuit and this Court is unwilling to conclude, based on the record before it, that the appeal is frivolous or that Petitioner will not ultimately prevail. The Court therefore finds this factor neutral.").

Given the limited information currently available to the Court with respect to this factor, the Court should find this factor to be neutral.

8.    *Weighing the Factors*

As discussed above, one factor weighs in the petitioner's favor, three factors weigh in the respondents' favor, and the remaining factors are neutral. On this record, the Court should conclude that the factors in respondents' favor outweigh those favoring the petitioner. Accordingly, the Court should conclude that petitioner's current detention under § 1226(c) at this point comports with due process.

To the extent petitioner did not appeal the IJ's order of removal to the BIA by the December 31, 2025, deadline and his removal order became final on that date, he is within the 90-day mandatory detention window of § 1231(a)(2). Thus, due process would not require a bond hearing at least until he is outside the 90-day window, in the post-removal period. *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004) ("the due process analysis attaches in the post-removal period").

Thus, the Court should find that petitioner's current detention, whether under § 1226(c) or § 1231, comports with due process.

## CONCLUSION

For these reasons, the Court recommends that petitioner's federal habeas petition (Dkt. 1) should be DENIED. A proposed order and judgment accompany this report and recommendation.

REPORT AND RECOMMENDATION - 13

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the above time limit, the Clerk shall set this matter for consideration on **February 11, 2026**, as noted in the caption.

Dated this 27th day of January, 2026.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14